**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KAY ELECTRONICS, INC., Respondent.**

**No. 19377.**

United States Court of Appeals
Eighth Circuit.

April 30, 1969.

Baruch A. Fellner, Atty., National Labor Relations Board, Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Richard S. Rodin, Atty., N. L. R. B., Washington, D. C., were with him on the brief.

Richard W. Miller, Kansas City, for respondent; George T. O'Laughlin, Phil A. Koury, Patrick D. McAnany, and James W. Jeans, Kansas City, Mo., were with him on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

We review consolidated cases involving unfair labor charges under Sections 8(a)

(1) and 8(a) (3) of the National Labor Relations Act found by both the Examiner and the Board against Kay Electronics, Inc. These include *inter alia* charges of unfair surveillance, pretextual discharges of two employees and unfair pre-election wage increases for the alleged purpose of inducing employees to vote against the union.

In May of 1966 union organization began at Kay Electronics, Inc. in Kansas City, Missouri. The company manufactures crystal holders needed in the electronics industry. Employees who favored union organization were asked to sign a list which was passed around at work. Della Galloway and Mary Grass were two of the first three to sign the list. Galloway wore a union button during the campaign. On June 14, Mary Grass was discharged, allegedly for unsatisfactory work. On June 20, unfair practice charges were filed on behalf of Grass and others. On August 5, the union notified the company of majority status and petitioned for certification pursuant to Section 9(c) of the Act. On August 29, the parties agreed to hold a consent election on September 9. At the same time the parties signed a separate agreement as to the reinstatement of Grass and others. It was agreed that Mary Grass was to be reinstated at the same pay rate as when she was terminated. Her reinstatement took place on September 13, but she was not given benefits of pay raises granted to those of her job classification and she was treated as a new employee for purposes of vacation and profit sharing.

On September 9, the election was held and the company won 61 to 22. On November 4, the Regional Director set the election aside because of wage increases given immediately before the election. On November 4, an unfair practice charge was filed for the discharge of Della Galloway, who had been terminated on November 2. On December 30, this charge was amended to include the previous claim of wrongful discharge of Mary Grass. On February 23, 1967, the Regional Director withdrew approval of the August 29, 1966, settlement agreement on the ground that the agreement had been violated in failing to reinstate Mary Grass according to its terms and because of the attempts to interfere with Section 7 rights of the employees by granting wage increases subsequent to the agreement.

*Discharge of Della Galloway*

Della Galloway was discharged on November 2, 1966. She had not been involved in union activity since September 9, when the company won the election. On the Monday following September 9, she was reprimanded by her new supervisor in the shipping department for making too many mistakes on her inventory lists. The following week her supervisor told her she was being transferred since the work was too heavy for her. She refused to sign a written acknowledgment of this as she had for the warning the week previous. The record is undisputed that due to loss of work for the Polaris program there had been a cutback in the shipping department and the work she had done in the past was eliminated. The Examiner found that the "record does indicate that Galloway's services are not needed in her old department, and she had not been replaced by a full-time employee." He nevertheless found that the company was "out to get her" for her prior union activity. Della Galloway had difficulty with her eyesight and could not work in certain jobs. After leaving the shipping department, she was assigned various jobs. Choosing not to work at night she was assigned certain day jobs, some of which were obviously too difficult for her to perform. Finally she was discharged for failing to do satisfactory work.[1]

[1, 2] The Examiner surmised from the conflicts in various company excuses and job transfers and the apparent slip-

---

1. When she was first hired she was transferred from one department to another on at least three occasions because of her eyesight handicap.

shod treatment given to Galloway after her post-election transfer from the shipping department, that her discharge was motivated by her prior union activity. The remoteness of the date of discharge and the employee's union activity weighs heavily against the Board's position. The Examiner must assure himself that the Board supports its case "in accordance with the preponderance of the reliable probative, and substantial evidence." 29 C.F.R. § 101.10(b) (1).

■■ In reviewing the Board's enforcement order we, of course, must assure ourselves that the record contains "substantial evidence" to support the Board's findings. In applying this standard we must evaluate the evidence the Board relies upon by considering as well the evidence that detracts from such contention. In the instant proceeding, it cannot be said, independent of Della Galloway's union activity, that the circumstances surounding her work termination made her discharge arbitrary or illogical. Cf. NLRB v. Hawthorn Co., 404 F.2d 1205 (8 Cir. 1969). This is particularly true in view of the Examiner's finding that the company was in good faith in transferring her from the work she was proficient in doing. This fact was intervening between the time of her union activities and her release almost two months later. To relate the discharge to these protected activities may be based upon reliable suspicion but is not legally predicated upon substantial proof. Considering the overall record, and in view of prior decisions of this court, we fail to find that degree of proof required to support a finding of wrongful discharge of Della Galloway. Cf. NLRB v. Monroe Auto Equip. Co., 368 F.2d 975 (8 Cir. 1966); Acme Prods., Inc. v. NLRB, 389 F.2d 104 (8 Cir. 1968).

### Discharge of Mary Grass

■ In contrast, we find the evidence is supportive of the discharge of Mary Grass, one of the pro-union leaders. Union activity started in May 1966. There exists testimony to show company surveillance shortly thereafter and knowledge concerning those who signed the list. On June 14, without prior notice or warning Mary Grass was terminated with the reprimand that "if she straightened herself out" she could come back only as a new girl. She immediately challenged her supervisor by saying she knew why she was being fired. His immediate response was, "No, it is not on account of the Union." When she went to pick up her check the plant manager told her he would "make it right with her" if she turned over the union list to him. She refused this request to him and also a similar request by her production manager, who stated that he knew she "had the list around." Despite evidence that Mary Grass had a high number of rejects on her job, we think the above evidence substantially relates the union activity to her discharge. The evidence relating to the rejects is substantially weakened by the overwhelming proof that other girls had similar rejects due to faulty material used at that time. The timing and circumstances of the termination, the existence of union animus and the pretextual ground of discharge asserted all support this Section 8(a) (3) violation.

■ In order for the Board to consider this charge, it found credible evidence to accept the Regional Director's vacation of the August 29 settlement agreement on the ground that the company violated the Act by its failure to pay Mary Grass at the appropriate rate of pay following her reinstatement. Since we find sufficient evidence to support the Board's order on this ground, we need not review the alternative contention that wage increases effected after the agreement likewise violated it.

■ In addition to the two discharges, the Board adopted the Examiner's findings of Section 8(a) (1) violations relating to (1) granting wage increases for the purpose of inducing employees to vote against the union, (2) telling employees that the company knew who had signed the pro-union lists (unfair surveillance),

(3) offering to prepare letters for employees of withdrawal from the union list and (4) promising an employee a benefit if union lists were turned over to the company. We have reviewed the record as to these charges, as well as the company's allegations of improper consolidation of the pre- and post-election discharges. We find substantial evidence to affirm the Board's order as to these unfair practices and further find no abuse of process in the joinder of the charges.

The petition of the Board for enforcement of its order is granted except as to the discharge of employee Galloway.